CHRISTOPHER DUNN ET AL. *v.* PETER L.
LEEPSON, P.C.
(AC 23106)

Lavery, C. J., and Bishop and McLachlan, Js.

Argued June 10—officially released September 9, 2003

*Christopher M. Dunn*, pro se, and *Nga N. Dunn*, pro se, the appellants (plaintiffs).

*Paul E. Pollock*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiffs, Christopher M. Dunn and Nga N. Dunn, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Peter L. Leepson, P.C., on four counts of their five count complaint, and on the defendant's counterclaim, stemming from the defendant's representation of the plaintiffs in a real estate transaction. On appeal, the plaintiffs claim that the court improperly (1) construed the retainer agreement entered into by the parties, (2) found for the defendant on their legal malpractice and negligence claims, (3) awarded $4000 to the defendant as the fair value of its legal services, (4) failed to award them punitive damages and (5) failed to award them counsel fees pursuant to General Statutes § 52-251a. We affirm the judgment of the trial court.

The dispute between the pro se plaintiffs and their former attorney arose out of the defendant's representation of the plaintiffs in what the court described as a "massive" real estate transaction. On December 4, 2000, Christopher Dunn and Peter L. Leepson, the principal of the defendant law firm, had a conversation concerning Leepson's representation of the plaintiff in connection with the purchase of residential real property and a related tax free exchange. Leepson testified that the fee for the transaction would be $1500 plus expenses and, if the transaction became complicated, requiring additional time, there would be additional fees. The plaintiffs claimed that the conversation called for a flat fee of $1500. The retainer letter, which Leepson sent to Christopher Dunn on December 7, 2000, called for a fee of $1500 plus $175 per hour for every hour he worked on the matter in excess of twenty hours. The

real estate transaction became very complicated. The plaintiff discharged the defendant before the closing occurred when the defendant held in escrow $8319.71, which had been returned during the negotiations to the defendant by the seller's attorney.

The plaintiffs commenced the present action in the small claims session of the Superior Court, which subsequently was transferred to the regular docket of the Superior Court on July 9, 2001. The plaintiffs' amended complaint alleged breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, legal malpractice and negligence, and sought damages, attorney's fees and punitive damages. The defendant filed a counterclaim alleging breach of contract. The court ruled in favor of the plaintiffs on the count alleging breach of fiduciary duty and for the defendant on the remaining counts and on its counterclaim, awarding damages to the defendant in the amount of $4000 as the reasonable value of the fees owed to the defendant by the plaintiffs. The court also ordered the defendant to return to the plaintiffs the $8319.71 held in escrow less the $4000 in fees owed. The court denied attorney's fees and punitive damages to the plaintiffs. This appeal followed.

I

The plaintiffs' first claim is that the court improperly found that the retainer agreement between the parties was for other than a flat fee of $1500. We disagree.

The standard of review to be applied by this court is whether the finding of fact was clearly erroneous. See *Hart* v. *Carruthers*, 77 Conn. App. 610, 612–13, 823 A.2d 1284 (2003). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 615. Our review of the record indicates that there was ample evidence to support the finding of the court that the retainer agreement was not limited to a flat fee.

## II

The plaintiffs next assert that the court, as a matter of law, improperly found in favor of the defendant on their legal malpractice and negligence claims due to their failure to offer expert testimony as to the standard of care applicable to Leepson's conduct or that any alleged failure by Leepson was the proximate cause of any damages they suffered. We disagree.

"As a general rule, for a plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care." (Internal quotation marks omitted.) *Vona* v. *Lerner*, 72 Conn. App. 179, 188, 804 A.2d 1018 (2002), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003). Not only must the plaintiffs establish the standard of care, but they must also establish that the defendant's conduct " 'legally caused' " the injury of which they complain. Id., 189. The plaintiffs offered no expert evidence with respect to either element. Our courts do recognize that in certain cases, the legal malpractice is so clear that expert testimony is not required. See *Paul* v. *Gordon*, 58 Conn. App. 724, 727, 754 A.2d 851 (2000). Here, however, the court found that this was not such a case because the real estate transaction at issue was "massive."

The plaintiffs argue that the court's finding in their favor on their claim of breach of fiduciary duty constituted sufficient proof of the defendant's legal malpractice. In support of their claim, the plaintiffs cite numerous cases regarding an attorney's obligation of

loyalty to clients. None of those cases, however, holds that an attorney's breach of an ethical duty creates a separate cause of action for malpractice.[1] "The Rules of Professional Conduct caution those who seek to rely on their provisions. They provide a framework for the ethical practice of law. . . . Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. . . . Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 403, 766 A.2d 416 (2001).

We conclude, therefore, that the court did not improperly find for the defendant on the legal malpractice and negligence claims.

### III

The plaintiffs next claim that the court improperly assessed and awarded $4000 to the defendant as the fair value of the defendant's legal services. We disagree.

The court found that the plaintiffs would not have been able to purchase their residence but for the efforts of Leepson and that $4000 was a fair fee for those services. "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 282, 823 A.2d 1172 (2003). Our courts have

---

[1] There was no finding by the court of any violation of the Rules of Professional Conduct by the defendant.

repeatedly held that the reasonableness of an award of attorney's fees may be determined by the exercise of the trier's own expert judgment. See *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 246, 440 A.2d 306 (1982). Here, there was ample evidence to support the court's findings. Accordingly, we conclude the court did not act improperly in issuing its award.

## IV

The plaintiffs' fourth claim is that the court improperly failed to award them punitive damages. They argue that punitive damages may be awarded in an action for deceit, which they assert is the essence of the breach of fiduciary duty claim on which they prevailed. We disagree.

The plaintiffs cite no statutory authority for an award of punitive damages stemming from a breach of fiduciary duty action. We therefore must determine whether punitive damages were available to the plaintiffs in a common-law tort claim. "As a general matter, [p]unitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Luciani* v. *Stop & Shop Cos.,* 15 Conn. App. 407, 413, 544 A.2d 1238, cert. denied, 209 Conn. 809, 548 A.2d 437 (1988). "Whether the defendant acted recklessly is a question of fact subject to the clearly erroneous standard of review." *Franc* v. *Bethel Holding Co.,* 73 Conn. App. 114, 138, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002). Here, the court specifically found that there was no evidence that the defendant's conduct was reckless. That conclusion is supported by our review of the record, and, therefore, is not clearly erroneous.

## V

The plaintiffs' final claim is that the court improperly failed to award attorney's fees in accordance with § 52-251a. We disagree.

Section 52-251a provides: "Whenever the plaintiff prevails in a small claims matter which was transferred to the regular docket in the Superior Court on the motion of the defendant, the court may allow to the plaintiff his costs, together with reasonable attorney's fees to be taxed by the court." In this case, the plaintiffs did prevail on a portion of their claim, and the court did, in fact, award them costs. There is no evidence in the record that the plaintiffs incurred any attorney's fees. Pro se litigants are not entitled to attorney's fees. See *Jones* v. *Ippoliti*, 52 Conn. App. 199, 212, 727 A.2d 713 (1999).

The judgment is affirmed.